In re Ernest B. Tomassi.

February Term, 1931.

Present:  Powers, C. J., Slack, Moulton, and Thompson, JJ., and Graham, Supr. J.

Opinion filed October 13, 1931.

*Gelsi Monti* and *Deane C. Davis* for the petitioner.

*Cornelius O. Granai*, State's attorney, and *Alland G. Fay*, grand juror, for the State.

POWERS, C. J.　This petitioner was also a witness in the Shady Case referred to in Hull's Case *ante* page 32, 156 Atl. 532. He refused to testify as hereinafter shown, was adjudged to be in contempt, and committed to jail. He then brought this petition for a writ of *habeas corpus* and was released on bail. The case in hand differs from the Hull Case in several respects. This petitioner testified that his answers to the questions asked would tend to incriminate him. He was at that very time being prosecuted for an offense of transporting liquor. When he referred to that prosecution in his claim of

privilege, the prosecuting officer nol-prossed it. After refusing to answer several specific questions, and being met with adverse rulings by the court, the petitioner finally said, "I refuse to answer all questions." Taken literally, this statement was going too far. But the statement is not to be considered as standing alone; it is to be considered with the other testimony given by the petitioner and the attendant circumstances. The transcript shows that the petitioner testified freely as to his acquaintance with Shady and her place, and other matters relevant to the case being tried. He claimed his privilege from time to time and was sustained by the court. He was asked, "Did you get into the police automobile with officer George?" He answered that he did. He was then asked, "Did he drive onto Granite Street from there with you in the automobile?" He refused to answer on the ground that "it might hurt my case." The court said it could not see "how it would tend to incriminate you," and the petitioner replied, "I refuse to answer all questions." It is quite apparent that the pending question had nothing whatever to do with the question then on trial. Indeed, it is not here claimed that the fact that the petitioner rode with officer George had anything to do with Shady's guilt. The nol. pros. of the charge against the petitioner did not affect his constitutional right of silence. The prosecuting officer was at liberty to bring a new complaint against him and therein make use of any testimony which he might give in the Shady Case. This, of course, was fully understood by the court. That the questioning of the petitioner was calculated, if not intended to serve some purpose other than the conviction of Mrs. Shady is made apparent by the record. The injustice of sending this man to jail for refusing to testify further is made plain by the brief of the State, from which it appears that when the petitioner arrived at the police station with the officer on the occasion referred to, he drew from his pocket a bottle of liquor and passed it over to the officer. The State's attorney knew all about this when he was seeking to draw from the witness testimony that would have been conclusive against him on a charge of transporting. It would have been a very lawyer-like thing for him to have informed the court of this incident. The question of privilege is primarily for the court before which the testimony is being given, but it is for re-examination by this Court. *In re Dewar*, 102 Vt. 340, 346, 148 Atl. 489. It is

frequently a difficult and delicate question to decide—especially in liquor .cases. Like all other questions presented to a judicial tribunal, it is to be dealt with firmly, but impartially. And if upon an unprejudicial consideration of all that appears the court is left in doubt as to whether the witness is entitled to remain silent, his ruling should be in favor of that privilege. *Ex parte Park,* 37 Tex. Cr. Rep. 590, 40 S. W. 300, 66 A. S. R. 835, 840. This is in harmony with our rule recently restated in the Dewar Case, *supra,* 102 Vt. at page 348, 148 Atl. 489, under the authority of which it is the duty of the court to have excused the petitioner from testifying unless he was fully satisfied that he was mistaken as to the effect of his testimony, if given. Indeed, some courts go so far as to say that ''where it is not so perfectly evident and manifest that the answer called for cannot incriminate as to preclude all reasonable doubt or fair argument, the privilege must be recognized and protected.'' *People* v. *Forbes,* 143 N. Y. 219, 38 N. E. 303, 306; *Janvrin* v. *Scammon,* 29 N. H. 280.

*Judgment that the respondent is illegally deprived of his liberty, and he is discharged from custody.*

NOTE. After the opinions in this and the preceding case were prepared and the results announced, *Doyle* v. *Hofstader*, 257 N. Y. 244, 177 N. E. 489, has come to hand. In that case, Chief Justice Cardozo, in his usual masterful way, discusses the whole subject of this constitutional privilege, and reaches conclusion in harmony with our decisions on the subject. We commend this opinion to the attention of the profession in this jurisdiction.—G. M. P.